*A. Y. Clement,* contra.

---

2134.  ZIPPERER, adm'x, *v.* DOYLE, surviving partner.

1. The provisions of § 1551 of the Political Code, requiring manufacturers or dealers in commercial fertilizers to register brands, etc., with the commissioner of agriculture, are not applicable to one who deals in fertilizers merely to the extent of making sales thereof, which he completes by giving the purchaser orders for the fertilizers, addressed to some manufacturer or dealer who has complied with the law, though he (the alleged dealer) pays the manufacturer directly and charges the purchaser with the price agreed on between him and the purchaser, and though he is not an agent of the manufacturer.
2. The case as a whole was fairly tried, and no sufficient reason appears for reversing the judgment.

Complaint; from city court of Savannah—Judge Freeman. August 7, 1909.

Argued December 7, 1909.—Decided January 21, 1910.

*Oliver & Oliver, Gordon Saussy,* for plaintiff in error.

*O'Byrne, Hartridge & Wright,* contra.

POWELL, J. 1. The plaintiffs, who were general merchants, sold to Zipperer a quantity of fertilizer to be used on his farm. The plaintiffs, although they engaged in the business generally of taking orders for fertilizers and making contracts to sell them, did not directly handle them. The fertilizers sold to Zipperer were manufactured by the Virginia-Carolina Chemical Company. The plaintiffs gave Zipperer an order to these manufacturers, and they delivered to him the fertilizers. The Virginia-Carolina Chemical Company charged them to the plaintiffs, and the plaintiffs charged them to Zipperer. Zipperer's administratrix (Zipperer having died) pleaded that the plaintiffs were dealers in commercial fertilizers and that they had not complied with § 1551 of the Political Code, by filing with the commissioner of agriculture the names of the brands, the guaranteed analysis, etc., as provided by that section. It was not insisted that the Virginia-Carolina Chemical Company had not complied with the law in that respect, and, while there was a plea and perhaps some evidence that the fertilizers had not been tagged and branded as required by law, the preponderance of the

evidence was to the effect that they had been tagged and branded. Exception is taken to the following instruction of the court to the jury: "Now, under the law of this State as it stood at the time this transaction occurred, it was required that manufacturers of fertilizers and certain dealers of fertilizers should file with the commissioner of agriculture certain information, including the name of the fertilizer and its analysis. I charge you (because there has been some argument upon that line, and because it is pleaded in this case) that that law does'not apply, or did not apply to such dealers as [the plaintiffs], under the facts undisputed in this case. So that a failure by [the plaintiffs] to file a brand, or an analysis, with the commissioner of agriculture would not in and of itself defeat a recovery by them. Now, the law as it stood then did require of the Virginia-Carolina Chemical Company, the manufacturers in this State of this stuff, the filing of such an analysis, with the name of the brand and so forth with the commissioner of agriculture, but the presumption is that people obey the law. It is made, by the act which prescribes that duty on the part of the manufacturer, a misdemeanor to fail to do it. The presumption is, people obey the law; and the burden is upon one defending a case of this sort to prove to the jury that there was not so filed with the commissioner of agriculture the analysis, name, and so forth of the fertilizer. Now, I charge you, with respect to that particular branch of the case, that there is no evidence in this case that that information was not filed with the commissioner of agriculture, and that is out of your consideration." That the exception may be more clearly understood, we will quote the provisions of § 1551 of the Political Code, to wit: "All manufacturers of, or dealers in, commercial fertilizers, or chemicals, or cottonseed meal to be used in manufacturing the same, who may desire to sell, or offer for sale, in the State of Georgia, fertilizers, chemicals, or cottonseed meal, shall first file with the commissioner of agriculture of the State of Georgia the name of each brand of fertilizers or chemicals which they may desire to sell in said State, either by themselves or their agents, together with the name of the manufacturer, the place where manufactured, and also the guaranteed analysis thereof; and if the same fertilizer is sold under different names, said facts shall be so stated, and the different brands that are identical shall be named." It is insisted by the plaintiff in error that

while the plaintiffs in this case were not manufacturers of fertilizers, they were dealers, and therefore that it was incumbent upon them as well as upon the Virginia-Carolina Chemical Company to file the required information with the commissioner of agriculture.

It is our opinion that while the plaintiffs were in a certain sense dealers in fertilizers, in that they generally undertook to procure them for their trade, yet they were not such dealers as this statute contemplates. Without deciding that the law does or does not apply to dealers who actually handle and distribute only such fertilizers as have been previously registered by some manufacturer or other dealer who has complied with the requirements of the law, yet we do decide that one, the course of whose business is not to furnish the fertilizers directly, but who, though he contracts to sell, executes the transaction by giving the purchaser an order on a manufacturer or dealer who has complied with the law, is not within the purview of the section of the code quoted above. The letter of the law hardly includes such a dealer, and certainly the spirit of the law does not. To hold that it did would be to say that every landlord who had a number of tenants and who gave them orders for the fertilizers he had agreed to furnish them would have to go through the form of complying with the section of the code quoted above, before he could collect his debt or maintain his lien. While, if it were necessary to give effect to the true intent of the statute to extend it this far, we would not hesitate to do so, yet where it is so plain as it is here that the intention is to the contrary, we will not extend it. We think that the charge excepted to stated the law correctly, as applied to the transaction before the court.

2. The foregoing proposition is the one chiefly relied on by the plaintiff in error, though there are other exceptions in the record. We have gone through the whole case carefully, and find no sufficient ground to justify a reversal.          *Judgment affirmed.*